**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::
**JAMES J. DUNN,**

                              **Petitioner,**

  **v.**                                                    **9:03-CV-0364**
                                                               **(NPM)**

**DANIEL A. SENKOWSKI, Superintendent,**

                              **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::
<u>**APPEARANCES:**</u>                    <u>**OF COUNSEL:**</u>

**FOR THE PETITIONER**:

**JAMES J. DUNN**
Petitioner, <u>Pro</u> <u>Se</u>
96-B-1034
Gowanda Correctional Facility
P.O. Box 311
Gowanda, NY 14070

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**          **G. LAWRENCE DILLON, Esq.**
Office of Attorney General          Assistant Attorney General
New York State Attorney General
207 Genesee St.
Utica, NY 13501

**NEAL P. MCCURN**
**SENIOR UNITED STATES DISTRICT JUDGE**

              <u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.     <u>Background</u>**

       **A.     <u>State Court Proceedings</u>**

       On June 14, 1995, an Oneida County grand jury returned a single count indictment

against petitioner, <u>pro</u> <u>se</u> James J. Dunn.  <u>See</u> Indictment Number 95-186 ("Indictment").  In

that accusatory instrument, Dunn was charged with one count of arson in the third degree, in

violation of Section 150.10 of the Penal Law of the State of New York.  See Indictment.  At his

arraignment on that charge on June 20, 1995 before Oneida County Court Judge Barry M.

Donalty, Dunn pleaded not guilty to the charge through his retained counsel.  See Transcript of

Arraignment (6/20/05) ("Arraignment Tr.") at 3.

On January 9, 1996, Dunn's counsel informed Patrick J. Cunningham, Acting Justice of

the Oneida County Court, that counsel had been involved in negotiations with the Oneida

County District Attorney that had culminated in an agreement in which Dunn would enter a

guilty plea to the third degree arson charge.  See Transcript of Change of Plea (1/9/96) ("Plea

Tr.") at 11.  Under the terms of that plea agreement, Dunn's sentence for his conviction on the

Indictment would run concurrent to the sentences to be imposed on him as a result of other

guilty pleas into which he had entered with respect to other, unrelated criminal charges brought

against him in both Oneida and Herkimer Counties.  Plea Tr. at 2-3.  After being questioned by

the County Court about the proposed plea, Dunn pleaded guilty before Justice Cunningham to

the third degree arson charge.  Plea Tr. at 8-11.

On March 29, 1996, Dunn was sentenced on the above conviction by Oneida County

Court Judge Patrick L. Kirk to a term of imprisonment of five to fifteen years, with that

sentence to be served concurrent with other terms of imprisonment, the longest sentence of

which was a term of eight and one third to twenty-five years imprisonment arising out of an

unrelated second degree arson conviction.  See Transcript of Sentencing (3/29/96) ("Sentencing

Tr.") at 2-4, 8-9.

Dunn appealed his conviction to the New York State Supreme Court, Appellate

Division, Fourth Department.  Through counsel's appellate brief, Dunn argued that:  i) the

2

sentencing judge could not properly impose the sentence on Dunn because that judge was not familiar with the underlying facts of the case; ii) his guilty plea was not knowingly, intelligently and voluntarily made; and iii) the sentence imposed on Dunn was unduly harsh and severe. See Appellate Brief on Appeal ("App. Br."). Dunn's appeal was opposed by the Oneida County District Attorney, and on May 10, 2000, the Appellate Division denied Dunn's appeal in all respects. See People v. Dunn, 272 A.D.2d 928 (4th Dept. 2000). On September 20, 2000, the Court of Appeals denied Dunn's application for leave to appeal to that court. People v. Dunn, 95 N.Y.2d 889 (2000).

On November 9, 2001, Dunn filed a collateral challenge to his state court conviction in the form of a motion to vacate his judgment of conviction pursuant to New York's Criminal Procedure Law ("CPL"), Section 440.10 ("CPL Motion").[1] In that application, Dunn argued that: i) he was denied the effective assistance of trial counsel; ii) the trial court erred in failing to sua sponte schedule a competency hearing regarding Dunn prior to accepting his guilty plea; iii) the conviction was obtained in violation of his right to be present at all material stages of his trial; iv) the plea was procured by duress, misrepresentation and/or fraud on the part of both the prosecutor and defense counsel; and v) the prosecutor improperly failed to disclose all cooperation agreements into which he had entered with other individuals. See CPL Motion. The District Attorney filed opposition papers to that application, and, through his affidavit executed on February 5, 2002, Dunn filed a reply affirmation in further support of his CPL Motion. See Attachment to Petition.

---

[1]     Petitioner attached a copy of his CPL Motion as an exhibit to his original petition.

3

In a Decision and Order dated April 16, 2002, Judge Kirk denied Dunn's CPL Motion in all respects ("April, 2002 Decision").  Dunn's application for leave to appeal that decision was denied by the Fourth Department.  See People v. Dunn, No. KA 02-01197 (4th Dept. Mar. 7, 2003) (reproduced as Exhibit E to Amended Petition (Dkt. No. 3) ("Am. Pet.")).

### B. Proceedings in This Court

Petitioner commenced this proceeding, pro se, on March 25, 2003.  See Petition (Dkt. No. 1).  After United States District Judge David N. Hurd reviewed Dunn's petition and found same to be deficient, Judge Hurd directed Dunn to file an amended pleading if he wished to proceed with this action.  Dkt. No. 2.  On May 9, 2003, Dunn filed an amended petition herein in accordance with the terms of Judge Hurd's directive.  Dkt. No. 3.  In that pleading, Dunn alleges that:  i) he received the ineffective assistance of trial counsel; ii) he was wrongfully denied a medical competency evaluation by the trial judge; iii) he was denied his right to be present at all material stages of his proceeding; iv) the conviction was obtained by duress, misrepresentation and/or fraud; v) the prosecutor violated Dunn's rights under Brady[2] by failing to disclose all cooperation agreements into which he had entered with potential prosecution witnesses; vi) his sentencing before a judge other than the judicial officer before whom Dunn pleaded guilty was improper; and vii) his guilty plea was not knowingly and voluntarily made. See Am. Pet., Grounds One through Seven.  Petitioner also attached a supporting memorandum of law to his amended pleading ("Supporting Mem.").  Judge Hurd thereafter directed the respondent to file a response to Dunn's amended pleading, see Dkt. No. 4, and on September 10, 2003, the Office of the Attorney General for the State of New York, acting on respondent's

---

[2]      Brady v. Maryland, 373 U.S. 83 (1963).

4

behalf, filed an answer (Dkt. No. 9), together with a memorandum of law in opposition to

Dunn's amended petition (Dkt. No. 10) ("Resp. Mem."). Petitioner thereafter submitted a

traverse in further support of his habeas application. See Dkt. No. 12. On January 5, 2006,

then-Chief United States District Judge Frederick J. Scullin, Jr. re-assigned this action to the

undersigned for disposition. Dkt. No. 13.

## II.    Discussion

### A.    Standard of Review Applicable to Dunn's Claims

The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act

("AEDPA") brought about significant new limitations on the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.

In discussing this deferential standard, the Second Circuit noted in Rodriguez v. Miller,

439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); see also DeBerry v. Portuondo, 403

F.3d 57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette

v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001). In providing guidance concerning application of

this test, the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established
> federal law if it contradicts Supreme Court precedent on the

> application of a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but
> nevertheless comes to a different conclusion than the Court did.
> [Williams v. Taylor, 529 U.S. 362,] at 405-06 [2000]; Loliscio v.
> Goord, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's
> decision is an "unreasonable application of" clearly established
> federal law if the state court "identifies the correct governing
> legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before
> it.  Williams, 529 U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2007); see also Williams v. Artuz, 237 F.3d 147, 152

(2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable."  Williams, 529 U.S. at 409; see also Sellan

v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable in this context means

"'some increment of incorrectness beyond error is required'" in order to grant a federal habeas

application.  Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (quoting Francis S. v. Stone,

221 F.3d 100, 111 (2d Cir. 2000)).

Additionally, under the AEDPA, "a determination of a factual issue made by a State

court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see

also DeBerry, 403 F.3d at 66; Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal

quotations omitted).

**B.      Consideration of Dunn's Claims**

6

1.     **Validity of Guilty Plea**[3]

In support of his ground challenging the propriety of his guilty plea, Dunn argues:

> Petitioner's plea of guilty was not knowingly, intelligently and
> voluntarily made because the trial court failed to obtain a waiver
> of Petitioner's Boykin rights[4] in violation of his 5th and 14th
> Amendment rights.

See Am. Pet., Ground Seven; see also Supporting Mem. at 24-25.  Dunn also claims that his

medical condition rendered him incompetent to enter the challenged guilty plea.  See Am. Pet.,

Ground Two; see also Supporting Mem. at 12-13.

i.     **Clearly Established Supreme Court Precedent**

"The longstanding test for determining the validity of a guilty plea is 'whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400

U.S. 25, 31 (1970)); see also Boykin, 395 U.S. at 242-43 (United States Constitution requires

that guilty plea be knowingly and voluntarily entered); Parke v. Raley, 506 U.S. 20, 29 (1992)

(guilty plea is valid when it is both knowingly and voluntarily made).

Additionally, it is well settled that "the criminal trial of an incompetent defendant

---

[3]      As will be seen, the validity of Dunn's guilty plea to the third degree arson
charge necessarily impacts this Court's analysis of other claims brought by him in this
action.  The undersigned will therefore first address Dunn's claim which challenges the
propriety of his guilty plea (including the failure of the County Court to conduct a
competency hearing) prior to considering the other claims petitioner asserts herein.

[4]      The phrase "Boykin rights" refers to the rights a criminal defendant waives
when entering a guilty plea in a state criminal proceeding.  See Phelps v. McClennan, No. 95
CIV. 7868, 1998 WL 470511, at *1 n.1 (S.D.N.Y. Aug. 11, 1998) (citing Boykin v.
Alabama, 395 U.S. 238, 243 (1969)).  These rights include the right not to incriminate one's
self, the right to a jury trial and the right to confront one's accusers.  Phelps, 1998 WL
470511, at *1 n.1 (citing Boykin, 395 U.S. at 243).

violates due process." <u>Medina v. California</u>, 505 U.S. 437, 453 (1992); <u>see</u> <u>Drope v. Missouri</u>,

420 U.S. 162, 171-72 (1975).  The test for determining whether an individual is competent to

effectively participate in his defense to criminal charges against him is well settled; the

individual must have the "sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding ... [and] a rational as well as factual understanding of the

proceedings against him." <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996) (citing <u>Dusky v.</u>

<u>United States</u>, 362 U.S. 402, 402 (1960)); <u>see also</u> <u>Godinez v. Moran</u>, 509 U.S. 389, 401 n.12

(citing <u>Drope</u>); <u>Pate v. Robinson</u>, 383 U.S. 375, 385 (1966) (due process requires that a

competency hearing be held when the facts or events presented to the court raise a <u>bona</u> <u>fide</u>

doubt regarding a defendant's competency).  Furthermore, the <u>Godinez</u> Court noted that the

standard for determining whether an individual is competent to plead guilty to a crime is the

same as the benchmark utilized in determining whether an individual is competent to stand

trial. <u>See</u> <u>Godinez</u>, 509 U.S. at 397-400.[5]

### ii.    Contrary to, or Unreasonable Application of, Supreme Court Precedent

In <u>Oyague v. Artuz</u>, 393 F.3d 99 (2d Cir. 2004), the Second Circuit noted that "the

question of whether a plea of guilty has been entered voluntarily within the meaning of the

Constitution is often a complex one that involves mixed questions of law and fact[.]" <u>Oyague</u>,

393 F.3d at 104.  When engaged in habeas review, federal courts are to accept factual

---

[5]    The focus of a competency inquiry is the defendant's ***ability*** to understand the proceedings, while the purpose of the court's colloquy during a plea allocution is to determine whether the defendant ***actually does*** understand the significance and consequences of a decision to plead guilty and whether that decision is coerced.  <u>See</u> <u>Godinez</u>, 509 U.S. at 401 n.12 (emphasis added) (citations omitted).

determinations made by the state courts unless they are not supported by the record. Id.

However, because the ultimate issue of whether a plea represents an effective waiver of federal

constitutional rights is controlled by federal law, federal habeas courts are not bound by the

legal conclusions reached by the state courts as to whether a plea was voluntarily made by a

defendant. Id.

Turning to the case sub judice, in considering the merits of Dunn's appellate claim

which challenged the propriety of his guilty plea in light of claimed Boykin violations (see App.

Br. at 21-22), the Fourth Department determined that the guilty plea was valid, opining that

Dunn "knowingly, voluntarily and intelligently waived his rights when pleading guilty." Dunn,

272 A.D.2d at 928. Judge Kirk found Dunn's claim relating to that court's failure to conduct a

competency hearing (see CPL Motion, Point Two) to be without substance. See April, 2002

Order at (unnumbered)1-2.

In conjunction with these claims, the undersigned has reviewed the transcript of Dunn's

change of plea to ascertain whether that transcript demonstrates that his guilty plea was

knowingly, intelligently and voluntarily made. The Court also reviewed that transcript to

ascertain whether testimony during that proceeding suggested that he was not competent to

enter such plea. That review revealed the following colloquy between the County Court and

Dunn:

> THE COURT:     All right, Mr. Dunn, ...  I know you've
> talked to [defense counsel], is [the
> proposed sentence under the plea
> agreement] agreeable with you?
>
> DUNN:          Yes, Your Honor.

| | |
|---|---|
| THE COURT: | Do you have any questions? |
| DUNN: | No. |
| THE COURT: | All right. On ... th[is] charge[] you're entitled to trial by jury or trial before the Court if you elect to go to trial.  If you plead guilty your plea of guilty is the same as or equivalent to a conviction after trial of ... arson in the third degree ... do you understand that? |
| DUNN: | Yes. |
| THE COURT: | All right, you've heard the disposition, apparently you're in agreement with it, can you make this plea of your own free will and judgment with nothing influencing it other than what has been said on the record today, can you do that? |
| DUNN: | Yes. |

Plea Tr. at 4-5.

The County Court then discussed with Dunn his guilty plea to a charge brought against

him in an unrelated indictment, and then engaged in the following discussion with Dunn

regarding the charge brought against him in Indictment No. 95-186:

| | |
|---|---|
| THE COURT: | Let's move on to ... Indictment 95-186.  Can you admit to me in this charge that you, on June 20, 1992, in the County of Oneida, the Town of Lee, you intentionally damaged a building, a residential structure belonging to a person by the name of Holz ... by intentionally setting a fire?  Are you prepared to admit that to me?  Are you prepared to admit that? |
| DUNN: | Yes. |

THE COURT:            [To the District Attorney] [Y]ou want to ask
                     him some questions on that?

                              *****

THE DISTRICT
ATTORNEY:            Okay.  Mr. Dunn, did you go to the home of
                     ... Holz on June 20, 1992?

DUNN:               Yes.
                              *****

THE DISTRICT
ATTORNEY:            And what was your purpose in going there
                     that day?

DUNN:               To start the fire.

THE DISTRICT
ATTORNEY:            Okay.  And did you, at that time, start a fire
                     inside that structure?

DUNN:               Yes.

                              *****

THE DISTRICT
ATTORNEY:            When you left the structure was it burning?

DUNN:               Yes.

THE DISTRICT
ATTORNEY:            And that structure belonged to ... Holz, is
                     that correct?

DUNN:               Yes.

THE COURT:            How do you plead, then, to arson in the third
                     degree, guilty or not guilty?

DUNN:               Guilty.

Plea Tr. at 8-11.

The record establishes that Dunn responded appropriately to the questions asked of him

11

at the above proceeding relating to the third degree arson charge.  Those responses established, inter alia, that:  i) Dunn was aware of the details of the plea agreement into which he had entered with the Oneida County District Attorney (Plea Tr. at 2-4); ii) he had intentionally started a fire that damaged a residential structure of another individual (Plea Tr. at 9-10); iii) he had reviewed the criminal matter with his attorney before pleading guilty to the arson charge (Plea Tr. at 4); iv) Dunn was aware of the length of the sentence he would receive if his guilty plea was accepted by the court (Plea Tr. at 4); and v) he was pleading guilty of his own free will, with no facts other than what was reflected on the record influencing his decision to plead guilty (Plea Tr. at 4-5).  Thus, the state court properly determined that petitioner's guilty plea was knowingly and intelligently made.

As to Dunn's claim regarding the County Court's failure to hold a competency hearing, he now suggests that his medical condition around the time he entered the guilty plea rendered him incompetent to enter that plea.  See Am. Pet., Ground Two.  However, at his arraignment before Judge Donalty, Dunn never indicated to the County Court that he suffered from any medical condition.  See Arraignment Tr.  Additionally, petitioner's answers to the questions posed to him at the time of his guilty plea discussed more fully above casts significant doubt on his current claim that his health compromised his ability to properly plead guilty before the County Court.[6]  See Plea Tr.

A competency hearing is only required when the trial court has reason to doubt an

---

[6]     It is also noteworthy that at the same proceeding at which Dunn pleaded guilty to the conviction challenged in this federal habeas action, he also pleaded guilty to other charges.  See Plea Tr.  None of Dunn's responses to the inquiries made of him at the hearing regarding those other charges suggested that his competence was an issue that should have been addressed by the trial court.  Id.

individual's competence.  Godinez, 509 U.S. at 401 n.13 (citations omitted); see also White v.

Walker, No. 01-CV-0238, 2007 WL 169702, at *20 (N.D.N.Y. Jan. 18, 2007) (citing Godinez)

(Sharpe, J., adopting Report-Recommendation of Magistrate Judge David E. Peebles).  Since

Dunn's conduct at his arraignment and during the plea colloquy afforded no basis for Justice

Cunningham to conclude that Dunn was not competent to enter into the plea, see Arraignment

Tr.; Plea Tr., the undersigned cannot conclude that the County Court's failure to inquire into

Dunn's competence – or schedule a hearing relating to his competence – prior to accepting his

guilty plea to the third degree arson charge constituted misconduct on the part of the County

Court.  To the contrary, the Justice Cunningham's decision to refrain from conducting such a

hearing, or otherwise questioning Dunn's competency, appears to have been a reasonable

determination based upon the facts available to him at that time.  E.g., White, 2007 WL

169702, at *20 (citing Harris v. Kuhlmann, 346 F.3d 330, 356 (2d Cir. 2003)).[7]

  In sum, the state court record establishes that after discussing the matter with counsel,

Dunn understood the nature and consequences of his plea and thereafter knowingly and

voluntarily pleaded guilty to the arson charge.  Furthermore, nothing at the change of plea,

including Dunn's answers to the trial court's questions about the crime to which he was

pleading guilty, indicated that a competency hearing was appropriate.  Justice Cunningham

therefore properly accepted Dunn's guilty plea.  Accordingly, the state court decisions denying

these challenges to Dunn's conviction, see Dunn, 272 A.D.2d at 928; April, 2002 Order at

---

[7]   Dunn's second ground for relief also faults trial counsel for his failure to request that the Court order Dunn to submit to a competency hearing.  See Am. Pet., Ground Two.  However, since nothing in the record at the change of plea suggested that such a hearing was required, Dunn could not demonstrate that his attorney rendered ineffective assistance in failing to request such a hearing.

(unnumbered) 1-2, are neither contrary to, nor represent an unreasonable application of, the clearly established Supreme Court precedent noted above.  This Court therefore denies Dunn's second and seventh grounds for relief.

## 2.   **Ineffective Assistance of Counsel**

In his initial ground for relief, petitioner asserts that he received the ineffective assistance of trial counsel.  <u>See</u> Am. Pet., Ground One.  Additionally, in his fourth ground, Dunn declares that his trial attorney wrongfully assured petitioner that if he pleaded guilty to the charge, he would be eligible to receive a "medical parole" after he had served one year in prison.  Am. Pet., Ground Four.  Dunn claims that counsel's erroneous assurance regarding petitioner's eligibility for parole establishes that his conviction was "procured by duress, misrepresentation or fraud."  <u>Id.</u>

### i.   **Clearly Established Supreme Court Precedent**

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const., amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  a) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and b) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688-90 (1984); <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in <u>Strickland</u>).

14

ii.     **Contrary To, or Unreasonable Application Of, Clearly**
**Established Supreme Court Precedent**

Dunn asserted his claims alleging ineffective assistance in his collateral challenge to his

conviction. <u>See</u> CPL Motion at 6-21, 29-32. Judge Kirk concluded in his April, 2002 Order

that Dunn did not establish his claim that he did not receive meaningful representation of

counsel. <u>See</u> April, 2002 Order at (unnumbered) 2. This Court must therefore ascertain

whether that decision of Judge Kirk is either contrary to, or represents an unreasonable

application of, <u>Strickland</u> and its progeny.[8]

(A)     **First Ground**

In his first ground for relief, Dunn argues that his trial attorney improperly failed to: a)

conduct an adequate pretrial investigation; b) interview witnesses; c) "investigate" a known

alibi witness; d) advise the County Court of Dunn's "serious medical problems;" e) ensure that

the guilty plea was knowingly and voluntarily entered; and f) notify the County Court that a

conflict of interest existed with respect to his representation of Dunn. <u>See</u> Am. Pet., Ground

One.

In <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973), the Supreme Court noted that:

> When a criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is charged, he
> may not thereafter raise independent claims relating to the

---

[8]      As noted above, the Fourth Department denied Dunn's application for leave
to appeal Judge Kirk's April, 2002 Decision. <u>See</u> <u>Dunn</u>, No. KA 02-01197, slip op. at 1.
Therefore, the County Court's April, 2002 Decision reflected the last court that rendered a
reasoned decision relating to Dunn's CPL Motion. <u>E.g.</u>, <u>Levine v. Commissioner of</u>
<u>Correctional Services</u>, 44 F.3d 121, 126 (2d Cir. 1995) (courts do not consider orders that
deny leave to appeal without comment in determining whether state court denied claim on
procedural basis) (citation omitted); <u>Scullark v. Greiner</u>, No. 02CIV1834, 2005 WL
3454730, at *6 (S.D.N.Y. Dec. 15, 2005) (citation omitted).

> deprivation of constitutional rights that occurred prior to the entry
> of the guilty plea.

Tollett, 411 U.S. at 267.  Thus, "a defendant who knowingly and voluntarily enters a guilty plea

waives all non-jurisdictional defects in the prior proceedings."  United States v. Garcia, 339

F.3d 116, 117 (2d Cir. 2003).

In light of the above-referenced precedent, it is clear that petitioner is now precluded

from challenging the adequacy of defense counsel's pretrial investigation and/or preparation,

including counsel's alleged failure to investigate possible alibis for Dunn and his failure to

interview prospective witnesses.  E.g., United States v. Torres, 129 F.3d 710, 715 (2d Cir.

1997) (where guilty plea valid, court declined to address argument that trial counsel was

constitutionally ineffective by failing to interview and call certain witnesses at a pretrial

suppression hearing) (citation omitted); Conyers v. McLaughlin, 96-CV-1743, 2000 WL

33767755, at *7 (N.D.N.Y. Jan. 27, 2000) (Sharpe, M.J.) (noting that "petitioner's pretrial

preparation claim is waived" where guilty plea was knowingly, intelligently and voluntarily

made), adopted Conyers v. McLaughlin, 96-CV-1743 (Dkt. No. 20) (N.D.N.Y. Feb. 22, 2000)

(Mordue, J.).

Even assuming, arguendo, that Dunn is not precluded from asserting claims that relate

to matters that occurred before he pleaded guilty to the arson charge, the undersigned finds that

these aspects of his ineffective assistance claim are nevertheless without substance.  For

example, although Dunn now claims that his attorney failed to "investigate the circumstances

that surrounded the alleged crime," and failed to interview witnesses or "investigate a known

alibi witness," see Am. Pet., Ground One, the Court notes that "[a] petitioner's 'bald assertion

16

that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.'" Atkinson v. United States, No. 05-CV-286, 2005 WL 3555946, at *7 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.) (quoting Sheedy v. United States, No. 96-CV-1289, 1997 WL 394664, at *9 (N.D.N.Y. July 8, 1997) (Munson, S.J.)) (other quotation and citations omitted).

Dunn also faults his trial attorney for failing to:  i) inform the County Court about Dunn's "serious" medical condition; and ii) ascertain whether Dunn's guilty plea was "knowingly and voluntarily entered."  See Am. Pet., Ground One.  However, as is discussed more fully above in conjunction with Dunn's second and seventh grounds for relief, this Court has determined that:  i) Dunn's claim that his medical condition around the time of his plea precluded him from properly pleading guilty is not supported by the record; and ii) nothing in the state court record, or the documents filed herein, suggests his plea was invalid for any reason – including Dunn's alleged incompetence.  Thus, these theories do not support his ineffective assistance claim.

In support of his final theory alleging ineffective assistance of trial counsel in this ground, Dunn argues that his attorney labored under a conflict of interest.  See Am. Pet., Ground One.  Specifically, Dunn claims that at the time he was represented by counsel, his attorney was also representing defense counsel's cousin, Patrick Letedro,[9] "in regards to the grand jury investigation."  Supporting Mem. at 10.  Although not clearly stated by petitioner herein, he asserted in the memorandum of law he filed in support of his CPL Motion that

---

[9]     In his state court memorandum of law, Dunn refers to Leterdo as "Letero."  See Memorandum of Law in Support of CPL Motion.  This Court will utilize the spelling provided to the Court by Dunn in the present federal action in referring to that individual.

17

Letedro had "received a subpoena to appear before the Oneida County grand jury in regards to the investigation against" Dunn, and that such individual "became an undisclosed informer" against Dunn.  See Memorandum of Law in Support of CPL Motion at 18.[10]

A criminal defendant's Sixth Amendment right to counsel includes a right to conflict-free representation.  See Wood v. Georgia, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest"); see also Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005) (citations omitted).  The Second Circuit has noted that there are three levels of conflicts of interest to be considered in evaluating a Sixth Amendment claim alleging such a conflict:  a) a per se conflict, which does not require a showing of prejudice; b) an actual conflict of interest that carries a presumption of prejudice; and c) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice.  See United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001) (citation omitted); see also Casso v. United States, No. 00-CV-6973, 2001 WL 1517537, at *2 (E.D.N.Y. Nov. 20, 2001) (citing John Doe).

A "per se" conflict of interest exists only where trial counsel is not authorized to practice law, see Solina v. United States, 709 F.2d 160, 164 (2d Cir. 1983), or is implicated in the very crime for which his client is on trial, see United States v. Cancilla, 725 F.2d 867, 870

---

[10]    The undersigned may properly look to the state court records supplied to the Court where the documents filed in the federal habeas action do not fully explain the basis for the requested habeas relief.  E.g., Carter v. McGinnis, No. 01-CV-655, 2005 WL 1868882, at *8 (W.D.N.Y. Aug. 2, 2005) (where petitioner's submissions do not provide adequate information relating to habeas claims, federal courts may look to appellate brief for guidance regarding basis for claim).

(2d Cir. 1984); see generally United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004).  Since

petitioner has not established the existence of either of these circumstances with respect to

defense counsel's representation of Dunn, no per se conflict exists.[11]

In order to prove that his attorney was under an actual conflict of interest during the

course of his representation, Dunn must demonstrate the existence of three distinct factors.

Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000); United States v. Moree, 220 F.3d

65, 69 (2d Cir. 2000); United States v. Berger, 188 F.Supp.2d 307, 333 (S.D.N.Y. 2002).  First,

petitioner must establish that an "actual conflict of interest" existed, i.e., that "the attorney's and

defendant's interests diverge[d] with respect to a material factual or legal issue or to a course of

action."  Armienti, 234 F.3d at 824 (citing Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993));

Berger, 188 F.Supp.2d at 333.  He must then establish "adverse effect" as a result of such

conflict by demonstrating the existence of "some 'plausible alternative defense strategy'" not

pursued by his counsel.  Armienti, 234 F.3d at 824 (citing United States v. Levy, 25 F.3d 146,

157 (2d Cir. 1994)) (other citation omitted).  Finally, Dunn must show "that the 'alternative

defense strategy was inherently in conflict with or not undertaken due to the attorney's other

loyalties or interests.'"  Armienti, 234 F.3d at 824 (citing Levy, 25 F.3d at 157) (other citation

omitted).

Initially, the Court notes that the only proof of the claimed conflict – defense counsel's

simultaneous representation of Dunn and Letedro – is based upon petitioner's own self-serving

statements to that effect.  It is not clear to this Court that such statements are sufficient for Dunn

---

[11]     The Second Circuit has consistently refused to extend the per se rule beyond
these two limited situations.  See United States v. Rondon, 204 F.3d 376, 379-80 (2d Cir.
2000) (collecting cases).

to maintain his burden of proof in this action.[12]  However, even assuming the veracity of

petitioner's claim, he has not established that his interests and those of his attorney diverged

with respect to any material factual or legal issue, or to any course of action relevant to the

criminal charges brought against Dunn.  Specifically, he has not alleged – much less established

– that Letedro ever provided incriminating testimony before the grand jury that indicted Dunn.

Nor has he discussed, in any way, what information Letedro purportedly provided to law

enforcement agents that was harmful to Dunn or his defense.  Significantly, petitioner has not

demonstrated that counsel's purported representation of Letedro effected, in any way, counsel's

advice to Dunn regarding the plea agreement into which he ultimately entered.  Nor has he

articulated any plausible alternative defense strategy that was either in conflict with defense

counsel's claimed loyalties to Letedro or which was not undertaken due to counsel's other

loyalties or interests relating to that individual.  Petitioner has therefore not demonstrated the

existence of an actual conflict of interest between himself, his trial attorney and Letedro.

       To establish that a potential conflict existed between Dunn and his trial counsel,

petitioner must demonstrate "both deficient performance by counsel and prejudice, under the

standard established in Strickland."  See John Doe, 272 F.3d at 125 (citations omitted).

---

       [12]       Dunn has not articulated any reason as to why his attorney was also
representing Letedro.  Nothing in the record before the Court indicates that such individual's
conduct necessitated legal representation, or that Letedro was, in fact, represented by Dunn's
counsel.  The petitioner bears the burden of proving in his habeas petition that his
constitutional rights were violated in the state court proceeding.  See Whitaker v. Meachum,
123 F.3d 714, 716 (2d Cir. 1997) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)
(petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on
collateral review) (other citations omitted); Lovacco v. Kelly, No. 99 CV 3094, 2005 WL
2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted); Frazier v. New York, 187
F.Supp.2d 102, 108 (S.D.N.Y. 2002) (citation omitted).

Petitioner has not established either of these prongs.  As to counsel's purportedly deficient performance, this Court is mindful of Judge Kirk's observation that Dunn "faced over 20 charges, in at least two counties, many of which were felonies," yet counsel "negotiated a plea to four counts," one condition of which was the imposition of concurrent sentences on all of those disparate convictions.  See April, 2002 Decision at 2; see also Sentencing Tr. at 8-9.  This relatively favorable disposition of the criminal charges pending against Dunn buttresses the trial court's determination that the conduct of Dunn's attorney was not objectively unreasonable. E.g., Seifert v. Keane, 74 F.Supp.2d 199, 206 (E.D.N.Y. 1999) ("[g]iven the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient") (footnote and citations omitted), aff'd, 205 F.3d 1324 (2d Cir. 2000).

Finally, Dunn has offered no proof which indicates that he was prejudiced, in any way, by the purported conflict of interest, which, in the context of a guilty plea, requires proof that "'there is a reasonable probability that ... he would not have pleaded guilty and would have insisted on going to trial.'" Roe v. Flores-Ortega, 528 U.S. 470, 485 (quoting Hill, 474 U.S. at 59); Larweth v. Conway, No. 04-CV-0050, ___ F.Supp.2d ___, ___, 2007 WL 1861498, at *6 (W.D.N.Y. June 29, 2007) (citing Hill).

### (B)   Fourth Ground

In his fourth ground, petitioner appears to claim that his attorney made material misrepresentations to Dunn which induced him into pleading guilty before Justice Cunningham. Specifically, he contends that his attorney wrongfully assured Dunn that if he pleaded guilty, he "would be eligible for 'medical parole' within one year."  Am. Pet., Ground Four.  Dunn contends that he subsequently learned that "medical parole" does not exist within the state of

New York, and appears to claim that his plea was therefore not intelligently made.  Id.  Dunn

also argues that his trial attorney "threatened the Petitioner by telling him that if he went to trial

he would get a hundred years."  Id.

However, as is discussed more fully above, Dunn specifically acknowledged at his

change of plea that he was aware that under the terms of the plea agreement, he would receive

an indeterminate sentence of five to fifteen years on his third degree arson conviction, with that

sentence to be served concurrent with, inter alia, a sentence of eight and one third to twenty-five

years imprisonment arising out of a second degree arson conviction.  See Plea Tr. at 2-4, 8-9.

Dunn never mentioned during the course of the plea allocution that he was informed by his

counsel that he would necessarily be paroled after serving only one year of his sentence, or that

his plea was induced, in any way, by such a promise.  See Plea Tr.  Additionally, although

Dunn addressed the Court at some length at his sentencing, see Sentencing Tr. at 6-8, he never

referred at that time to his current claim regarding medical parole.  See Sentencing Tr.

Petitioner's current, unsupported habeas claim that his attorney wrongfully induced Dunn to

plead guilty by assuring him that his maximum term of imprisonment would be one year –

which cannot be reconciled with the statements made both to and by him at his plea and

sentencing – does not afford this Court a basis for granting petitioner's request for relief.  E.g.,

United States v. Caesar, 94 Cr. 59, 1995 WL 312443, at *3 (S.D.N.Y. May 23, 1995)

("statements made during a plea allocution carry a strong presumption of veracity.  Such

statements are conclusive absent credible reasons justifying departure from their apparent

truth") (citations and internal quotation marks omitted); United States v. Napolitano, 212

F.Supp. 743, 747 (S.D.N.Y. 1963) ("defendant's admissions ... [at guilty plea] are solemn

declarations; they are not to be lightly disregarded in favor of his present self-serving assertion"); see generally Blackledge v. Allison, 431 U.S. 63, 73 (1977) (representations made by party during plea colloquy carry a strong presumption of veracity).

Dunn also faults his attorney for purportedly misinforming petitioner that his conviction following a jury trial on the criminal charges pending against him would result in a term of imprisonment of one hundred years. See Am. Pet., Ground Four. However, in denying the CPL Motion, the County Court noted that Dunn's guilty plea had resolved over twenty different criminal charges that had been pending against Dunn, "many of which were felonies." See April, 2002 Order at (unnumbered) 2. The petitioner bears the burden of proof in the habeas action he commences. See Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); Lovacco v. Kelly, No. 99 CV 3094, 2005 WL 2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted). By failing to establish that his sentencing exposure following his conviction on at least twenty criminal charges could not have resulted in a term of imprisonment exceeding the one hundred year period purportedly referenced by counsel, Dunn has failed to sustain his burden of proof in this matter.[13]

Furthermore, liberally construing this claim as one which asserts that his plea was

_____

[13]    The undersigned notes that even where an attorney overestimates the maximum term of imprisonment to which an individual may be subject in the context of a guilty plea, that misrepresentation of counsel does not necessarily entitle a petitioner to habeas intervention. E.g., Hibbert v. Poole, 415 F.Supp.2d 225, 236-37 (W.D.N.Y. 2006) (ineffective assistance not demonstrated where petitioner pleaded guilty following advice from counsel that may have "overestimated the possible sentence exposure" of petitioner).

invalid because it was induced out of fear of a lengthy prison term, the Court rejects such claim because, as noted above, the plea colloquy establishes that Dunn knowingly, intelligently and voluntarily pleaded guilty to the third degree arson charge. Thus, this final theory does not afford petitioner a basis for federal habeas intervention.

In sum, Dunn has failed to establish that the County Court's decision denying his ineffective assistance claims (see April, 2002 Order at (unnumbered) 2) is either contrary to, or involves an unreasonable application of, the above-cited Supreme Court precedent. Therefore, he is not entitled to habeas relief on his first or fourth grounds for relief.

### 3.    Right to Be Present

In his third ground, Dunn claims that he was wrongfully denied his right to be present at all material stages of his "pre-trial proceedings."  See Am. Pet., Ground Three.  He then asserts that at his sentencing, Dunn lodged an objection to the proceedings which prompted the County Court to "instruct[] the prosecutor and defense counsel to go into ... chambers and work this out."  Id.[14]  He argues that he was not permitted to enter chambers with his counsel at that time, and that, as a result, his conviction and sentence must be vacated.  Id.

### i.    Clearly Established Supreme Court Precedent

It is well settled that a criminal defendant's presence at trial is required "to the extent that a fair and just hearing would be thwarted by his absence."  Snyder v. Massachusetts, 291 U.S. 97, 107-08 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964); see Illinois v. Allen, 397 U.S. 337, 338 (1970).  This guaranty encompasses the right "to be present

---

[14]    It is unclear to the undersigned how an incident that purportedly occurred during a sentencing hearing may properly be characterized as a "pre-trial proceeding[]."  See Am. Pet., Ground Three.

24

at all stages of the trial where his absence might frustrate the fairness of the proceedings,"
Faretta v. California, 422 U.S. 806, 819 n.15 (1975), and includes a defendant's right to attend
hearings in which he is not actually confronting witnesses or evidence against him.  See
Kentucky v. Stincer, 482 U.S. 730, 745 (1987); United States v. Gagnon, 470 U.S. 522, 526
(1985) (per curiam).  As the Supreme Court has recognized, however, this right to be present is
not absolute; it is triggered only when the defendant's "presence has a relation, reasonably
substantial, to the fu[l]lness of his opportunity to defend against the charge."  Snyder, 291 U.S.
at 105-06.  Thus, there is no constitutional right to be present when the defendant's presence at
a proceeding "would be useless, or the benefit but a shadow."  Snyder, 291 U.S. at 106-07.

> ii.      **Contrary To, or Unreasonable Application of, Supreme
> Court Precedent**

This aspect of Dunn's habeas petition, which he also raised in his CPL Motion, see id.
at 25-26, must be denied as both factually and legally flawed.

Initially, the undersigned notes that the transcript of the sentencing hearing does not
support Dunn's claim that Judge Kirk suspended or delayed that proceeding and directed
defense counsel and the prosecutor to resolve an issue raised by Dunn.  To the contrary,
although the record clearly reflects that petitioner objected at that time to the fact that Judge
Kirk was the judicial officer who would impose sentence on Dunn, see Sentencing Tr. at 3, the
County Court merely noted Dunn's objection and then declared that it was "prepared to follow
the agreement that was reached in this matter" concerning Dunn's sentence.  Sentencing Tr. at
3-4.  At no point during the sentencing hearing is any recess, delay or postponement noted on
the record.  See Sentencing Tr.  Dunn's failure to provide any record support for his claim that a

meeting between defense counsel and the prosecutor took place during the course of his sentencing represents a failure on his part to shoulder his burden of proof.  Whitaker, 123 F.3d at 716; Lovacco, 2005 WL 2482518, at *3; Frazier, 187 F.Supp.2d at 108 (S.D.N.Y. 2002) (citation omitted).

Moreover, even if such a conference had taken place, it is not apparent to this Court that such meeting amounted to a "critical stage" of the criminal proceeding below.  Significantly, petitioner does not claim that Judge Kirk was present at the claimed conference.  See Supporting Mem. at 14 ("Judge Kirk stayed in the courtroom while the attorneys went in chambers").  During the course of virtually all criminal matters, meetings occur between defense counsel and the District Attorney at which a criminal defendant is appropriately not present.

Finally, even assuming, arguendo, that Dunn was not permitted to attend the claimed meeting between defense counsel and the prosecutor which occurred at sentencing, as noted above, a defendant's right to be present is not absolute; he has no right to be present during a portion of a criminal proceeding when his presence at the hearing would be marginal or useless. E.g., Snyder, 291 U.S. at 106-07.  As the Second Circuit noted in Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2001), a defendant's presence at every stage of the proceedings is not constitutionally required; "[c]ommon sense dictates that substantial performance of its terms is sufficient."  Clark, 214 F.3d at 322 (quoting People v. Mullen, 44 N.Y.2d 1, 5-6 (1978)).  Thus, when there is no indication that a defendant "could have done anything had he been at the hearing nor would he have gained anything by attending," no due process violation results from the mere holding of a hearing in a defendant's absence.  Stincer, 482 U.S. at 747; Cohen v.

Senkowski, 290 F.3d 485, 489 (2d Cir. 2002)

In the case sub judice, Judge Kirk imposed the sentence upon which the parties had previously agreed. Compare Plea Tr. at 2-3 with Sentencing Tr. at 8-9. Since it is clear that petitioner's absence from the claimed conference at his sentencing did not impact, in any way, the sentence ultimately imposed on Dunn, he has failed to establish that his presence at the claimed meeting would have been useful or otherwise beneficial to him. E.g., Perez v. Greiner, No. 00Civ.5504, 2005 WL 613183, at *5 (S.D.N.Y. Mar. 14, 2005); Flores v. Keane, 211 F.Supp.2d 426, 444-45 (S.D.N.Y. 2001); Lyon v. Senkowski, 109 F.Supp.2d 125, 138 (W.D.N.Y. 2000). Thus, his absence from that alleged conference was not constitutionally significant.

In light of the foregoing, this Court concludes that Dunn had not demonstrated that the state court's decision denying this aspect of his CPL Motion, see April, 2002 Order at (unnumbered) 2, is either contrary to, or represents an unreasonable application of, the above-cited clearly established Supreme Court precedent. Therefore, petitioner's third ground for relief is denied.

### 4.    **Rights Under Brady**

In his fifth ground, Dunn argues that the prosecutor failed to disclose to Dunn's counsel all cooperation agreements into which the District Attorney had entered with other individuals, thereby violating Dunn's Brady rights. See Am. Pet., Ground Five.[15] This claim was raised by Dunn in the fifth point of his CPL Motion. See id. at 33-35.

---

[15]    These agreements were purportedly made by the District Attorney with certain individuals in exchange for their grand jury testimony against Dunn. Supporting Mem. at 20.

Federal district courts have held that a valid guilty plea waives any subsequent <u>Brady</u> claim brought in a federal habeas petition.  <u>See</u> <u>Gayle v. Lacy</u>, No. 95-CV-683, 1997 WL 610654 at *8 (N.D.N.Y. 1997) (Pooler, D.J.) ( "By entering a guilty plea and admitting to each and every factual element of the charge, petitioner waived his right to assert that his rights had been violated by the prosecution's failure to disclose <u>Brady</u> material");  <u>Jackson v. Mitchell</u>, No. 04CV137, 2005 WL 3557406, at *6 (W.D.N.C. Dec. 20, 2005), <u>aff'd</u>, 178 Fed.Appx. 325 (4th Cir. 2006) (unpublished); <u>Young v. Quarterman</u>, No. 05-CV-816, 2006 WL 2370337, at *7 (N.D.Tex. Aug. 16, 2006) (citing <u>Tollett</u>) (other citations omitted).  As noted above, the undersigned has determined that the challenged guilty plea is valid and not subject to constitutional attack.  Therefore, Judge Kirk's order denying Dunn's <u>Brady</u> claim, <u>see</u> April, 2002 Order at (unnumbered) 2, is neither contrary to, nor an unreasonable application of, <u>Tollett</u>.  Thus, this Court could deny this aspect of Dunn's fifth ground for relief on this basis alone.

However, the Court notes that some district courts within this Circuit have opined that an individual's right to receive <u>Brady</u> material **<u>cannot</u>** be waived, notwithstanding the existence of a valid guilty plea.  <u>See</u> <u>United States v. Sapia</u>, No. 02 CIV 649, 2002 WL 620483, at *9 n.4 (S.D.N.Y. Apr. 18, 2002) (emphasis added) (citation omitted), <u>remanded on other grounds</u> <u>Sapia v. United States</u>, 108 Fed.Appx. 661 (2d Cir. Aug. 4, 2004); <u>see also</u> <u>Brown v. Berbary</u>, No. 01-CV-6500, 2004 WL 1570258, at *4-5 (W.D.N.Y. June 16, 2004); <u>Fambo v. Smith</u>, 433 F.Supp. 590 (W.D.N.Y.) (<u>passim</u>), <u>aff'd</u>, 565 F.2d 233 (2d Cir. 1977).[16]  Since there is authority

---

[16]    The rationale for finding that a <u>Brady</u> claim survives a guilty plea is premised on the theory that "guilty pleas cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution."  <u>See</u> <u>Sapia</u>, 2002 WL

in this Circuit that stands for the proposition that a <u>Brady</u> claim is not necessarily foreclosed by a valid guilty plea, this Court will alternatively consider whether Dunn's <u>Brady</u> claim has substance.  <u>E.g.</u>, <u>Sapia</u>, 2002 WL 620483, at *9 n.4; <u>Brown</u>, 2004 WL 1570258, at *4-5; <u>Fambo</u>, 433 F.Supp. at 594-99.

In <u>Brady</u>, the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  <u>Brady</u>, 373 U.S. at 87.  To prove a <u>Brady</u> violation, a habeas petitioner must establish that:  1) the evidence at issue was favorable to the accused, either because it was exculpatory or it could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding.  <u>Moore v. Illinois</u>, 408 U.S. 786, 794-95 (1972); <u>see also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

Additionally, it has been held that the prosecution is required to disclose to the defense cooperation agreements into which it has entered.  <u>Giglio v. United States</u>, 405 U.S. 150, 151-53 (1972).  The failure to disclose such agreements, however, is only reversible error if such failure undermines the confidence in the outcome of the criminal proceeding.  <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985); <u>see</u>, <u>e.g.</u>, <u>Hemphill v. Senkowski</u>, No. 02 CIV. 7093, 2004 WL 943567, at *12 (S.D.N.Y. May 3, 2004) (citations omitted).

In opposing this aspect of Dunn's petition, respondent argues that petitioner has "fail[ed] to establish how, if at all, these Prosecution agreements are in any way exculpatory."

_____

620483, at *9 n.4 (internal quotation and citation omitted).

29

Resp. Mem. at 15.

Dunn has failed to articulate how the cooperation agreements that form the basis of this aspect of his amended petition are either exculpatory or could have been used by defense counsel to impeach prosecution witnesses if Dunn had proceeded to trial on the Indictment. Petitioner has therefore failed to sustain his burden of proof as to this element of his Brady claim.  Whitaker, 123 F.3d at 716; Lovacco, 2005 WL 2482518, at *3; Frazier, 187 F.Supp.2d at 108 (S.D.N.Y. 2002) (citation omitted).

Next, the undersigned notes that cooperation agreements are properly disclosed by the prosecution immediately prior to the witness's testimony at trial, rather than during pretrial discovery.  See United States v. Morales, No. 93 Cr. 291, 1993 WL 465209, at *13 (S.D.N.Y. Nov. 9, 1993) (citing United States v. Percevault, 490 F.2d 126, 131 (2d Cir. 1974) (other citations omitted)).  Since Dunn pleaded guilty **prior to** the commencement of his trial, the prosecutor's duty to disclose such agreements had not yet arisen.  Therefore, this Court cannot properly find that the information relating to the cooperation agreement was "suppressed" by the prosecutor in a Brady sense.  Dunn has therefore not established the second element of his Brady claim.

Finally, the undersigned notes that suppression of Brady material does not amount to a constitutional violation unless the suppressed evidence is material, i.e., if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Bagley, 473 U.S. at 682; Boyette, 246 F.3d at 91 (citing Bagley); see also Cantone v. Superintendent, New York Correctional Facility at Green Haven, 759 F.2d 207, 213 (2d Cir. 1985); Chisholm v. Girdich, No. 02-CV-5502, 2004 WL 315226, at *5

30

(E.D.N.Y. Feb. 17, 2004) (citing <u>Strickler</u>); <u>Livingston v. Herbert</u>, 00-CV-1698, 2002 WL 59383, at *3 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), <u>adopted</u>, (N.D.N.Y. Jan. 25, 2002) (Kahn, J.), <u>aff'd</u>, (2d Cir. Sept. 11, 2002).  The "test of materiality in the context of a plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." <u>Tate v. Wood</u>, 963 F.2d 20, 24 (2d Cir. 1992).

Nothing before the Court suggests – much less establishes – that Dunn would not have entered a guilty plea to the Indictment if the cooperation agreements had been disclosed to Dunn prior to the entry of his guilty plea.  Additionally, the concurrent sentences he received on his arson and other, unrelated convictions discussed more fully above strongly suggests that Dunn would have accepted the plea proposal offered to him with respect to the Indictment, regardless of whether or not the cooperation agreements were provided to Dunn's counsel prior to the time at which he pleaded guilty.

A habeas petitioner must satisfy all three <u>Brady</u> elements to prevail on such a claim. <u>E.g.</u>, <u>Hughes v. Phillips</u>, 457 F.Supp.2d 343, 359 (S.D.N.Y. 2006)) (citing <u>Leka v. Portuondo</u>, 257 F.3d 89 (2d Cir. 2001)).  Since Dunn has failed to establish any of the three required elements concerning his <u>Brady</u> claim, this aspect of his request for federal habeas intervention must (alternatively) be denied for this reason.

### 5.    Judge Who Presided Over Sentencing

In his sixth ground, Dunn argues that the judge who imposed sentence on him was not the same judicial officer before whom Dunn pleaded guilty.  Am. Pet., Ground Six.  Dunn claims that "[t]he new judge was unaware of all the points of the case and was not informed

enough to pronounce sentence," and that, as a result, his constitutional rights were violated.  Id.

Unfortunately for Dunn, "there is no ... federal right to be sentenced by the same judge

that took a guilty plea and ... no constitutional provision that guarantees such a right."  Taylor v.

Bowersox, 329 F.3d 963, 969 (8th Cir. 2003).  Since no clearly established Supreme Court

precedent mandated that Dunn be sentenced by the same judge who accepted his guilty plea, he

cannot establish that the Appellate Division's decision denying this aspect of his appeal, see

Dunn, 272 A.D.2d at 928, is either contrary to, or represents an unreasonable application, any

clearly established Supreme Court precedent.  E.g. Smith v. Barkley, No. 9:99-CV-0257, 2004

WL 437470, *6 (N.D.N.Y. Feb. 14, 2004) (Sharpe, J.)) (other citation omitted).  In light of the

foregoing, this Court denies Dunn's sixth ground for relief.

**III.    Certificate of Appealability**

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals
> from –
>
> > (A) the final order in a habeas corpus proceeding
> > in which the detention complained of arises out of
> > process issued by a State court ....[17]

A Certificate of Appealability may only be issued "if the applicant has made a

substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  Since

petitioner has failed to make such a showing herein, the Court declines to issue any Certificate

of Appealability in this matter.

---

[17]    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed.R.App.P. 22(b).

WHEREFORE, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

ORDERED, that Dunn's amended habeas petition (Dkt. No. 3) is **DENIED** and **DISMISSED**, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:      August 7, 2007
            Syracuse, New York



_____
Neal P. McCurn
Senior  U.S. District Judge

33